IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 3:05-cr-00313-M-1 |
| | § | |
| ALEJANDRO TAMAYO, | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Alejandro Tamayo is presently in federal custody serving a life sentence on his 2006 conviction for conspiracy to possess with intent to distribute in excess of 500 grams of methamphetamine in violation of 21 U.S.C. § 846 (21 U.S.C. §§ 841(a)(1) and (b)(1)(A)). He has filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) seeking a sentence reduction to time served based on numerous alleged "extraordinary and compelling" circumstances. (ECF No. 526.) For the following reasons, the Court should DENY Tamayo's motion.

**Background**

In 2005, law enforcement identified Tamayo as a methamphetamine and cocaine supplier in the Dallas area with several customers purchasing large quantities of methamphetamine and cocaine and distributing it in and around the Dallas area. On February 16, 2006, High Intensity Drug Trafficking Area (HIDTA) officers executed federal warrants at Tamayo's home in Dallas. Tamayo shot at the officers serving the warrant and injured

four of them. Tamayo was arrested at the conclusion of the gunfight. During the search of his house, officers discovered cocaine, several firearms, and $132,662 in cash.

In April 2006, the grand jury in this district returned a superseding indictment, charging Tamayo with multiple felonies, including the following: conspiracy to distribute 500 grams or more of methamphetamine; possession with the intent to distribute 500 grams or more of cocaine; possession of a firearm during and in relation to a drug-trafficking offense; two counts of assault on a federal officer, and possession of a firearm during and in relation to a crime of violence. Less than three months later, Tamayo filed a factual resume with the Court admitting his guilt to Count One of the superseding indictment. On August 1, 2006, Tamayo appeared before a magistrate judge and changed his plea on Count One to guilty. There was no plea agreement.

The Court held a sentencing hearing on November 27, 2006. The presentence report (PSR) recommended a guideline imprisonment range of a life sentence.[1] After hearing from multiple witnesses on Tamayo's

---

[1] The PSR found Tamayo responsible for distributing over 212 kilograms of methamphetamine during the conspiracy, resulting in a base offense level of 38. The PSR also included an additional two levels for Tamayo's possession of firearms during the offense, two levels because the methamphetamine originated in Mexico, six levels because Tamayo shot at the officers as they executed the search warrant at his home, and four levels for his aggravating role in the offense. After a three-level reduction for acceptance of responsibility, the PSR recommended an adjusted offense level of 49. At

objections to the PSR and the appropriate sentence, the Court sentenced him to life imprisonment and ordered him to pay $37,662.44 in restitution. He appealed to the Fifth Circuit Court of Appeals, and on December 26, 2007, the Fifth Circuit affirmed his conviction and judgment. Tamayo also filed at least five motions to vacate, set-aside, or correct sentence under 28 U.S.C. § 2255, all of which were denied or dismissed as successive. *See* Case No. 3:09-cv-00094-M; Case No. 3:13-cv-03473-M-BF; Case No. 3:13-cv-05035-M-BF; Case No. 3:16-cv-01863-M-BF; Case No. 3:19-cv-0522-M-BT.

On June 20, 2021, Tamayo filed the pending motion for compassionate release under § 3582(c)(1)(A)(i) asserting a variety of alleged "extraordinary and compelling" circumstances, which are set forth in his 68-page handwritten motion. A consistent theme in Tamayo's motion is that he would be facing a significantly shorter sentence than life imprisonment if he were resentenced today. Ultimately, Tamayo requests that the Court reduce his sentence to time served.

In its response, the Government argues that Tamayo's motion should be denied for two reasons. One, he seeks to relitigate issues he previously argued at sentencing, in his appeals, and in his § 2255 motions. Therefore, the Court can deny his motion because he has failed to present

---

sentencing, the Court overruled Tamayo's objection to the enhancement for causing injury to the officers and modified the aggravating role adjustment from four levels to three levels, resulting in an adjusted offense level of 48.

"extraordinary and compelling reasons" for relief. Second, even if the Court finds that he has shown "extraordinary and compelling reasons," his motion should be denied based on the § 3553(a) factors. Tamayo did not file a reply, and the time for doing so has passed. His motion is now fully-briefed and ripe for determination.

### Legal Standards and Analysis

A district court lacks inherent authority to modify a defendant's sentence after it has been imposed. *See* 18 U.S.C. § 3582(c). However, under § 3582(c)(1)(A),

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable[.]

18 U.S.C. § 3582(c)(1)(A). A district court can reduce a sentence under § 3582(c)(1)(A)(i) where: (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) a sentence reduction is appropriate "after considering the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Shkambi, 993 F.3d 388, 389 (5th Cir. 2021)* (quoting § 3582(c)(1)(A)). Congress did

not specifically define the phrase "extraordinary and compelling reasons." *Id.* However, the commentary to the United States Sentencing Guidelines (U.S.S.G.) § 1B1.13 informs the analysis for district courts regarding what constitutes "extraordinary and compelling" circumstances warranting compassionate release under § 3582(c)(1)(A)(i). *United States v. Thompson,* 984 F.3d 431, 433 (5th Cir. 2021) (citing *United States v. Rivas,* 833 F. App'x 556, 557-58 (5th Cir. 2020)); *see also Shkambi,* 993 F.3d at 393 (noting that the district court is bound only by § 3582(c)(1)(A)(i) and the sentencing factors in 18 U.S.C. § 3553(a)). Congress has specifically stated that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t) (emphasis added). Additionally, courts across the country have identified specific situations where "extraordinary and compelling reasons" exist. For example, a court can consider changes in the law and to the U.S.S.G.

In a court's analysis under § 3582(c)(1)(A)(i), the Sentencing Commissions' policy statement and commentary remain persuasive. *See United States v. Logan,* 532 F.Supp.3d 725, 730 (D. Minn. Apr. 1, 2021) (finding § 1B1.13's definition of "extraordinary and compelling" should be afforded "substantial deference . . . as such deference is consistent with the intent (even if not mandated by the letter) of § 3582(c)(1)(A)"). When a court finds that "extraordinary and compelling reasons" exist, those reasons must

still outweigh the § 3553(a) factors.[2] *See* 18 U.S.C. § 3582(c)(1)(A). A

defendant bears the burden of demonstrating he is entitled to

---

[2] The § 3553(a) factors are:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed—

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .

(5)  any pertinent [Sentencing Commission] policy statement . . .

(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

compassionate release. *See United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019) ("In general, the defendant has the burden to show circumstances meeting the test for compassionate release."); *see also United States v. Whirl*, 2020 WL 3883656, at *1 (S.D. Miss. July 9, 2020).

**1. <u>Tamayo has fully exhausted his administrative remedies.</u>**

As a preliminary matter, the Court must address whether Tamayo exhausted his administrative remedies prior to filing his motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). The Court should find that he did.

A court may not consider modification of a defendant's sentence under § 3582(c)(1)(A) unless a motion for modification is properly made by the Director of the Bureau of Prisons (BOP) or by a defendant who has fully exhausted his administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A). In this context, exhaustion of administrative remedies requires a defendant to receive a denial from the warden at the defendant's prison facility or wait thirty days without receiving a response to a request. *Id.* The exhaustion requirement set forth in § 3582(c)(1)(A) cannot be waived. *See United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory—that a prisoner *must* exhaust their BOP remedy before filing in district court—we must enforce this procedural rule[.]").

In this case, to demonstrate that he has exhausted his administrative remedies under § 3582(c)(1)(A), Tamayo filed a copy of his "application for

compassionate release/reduction in sentence" that he filed with the Warden at his prison. Mot. 70-75 (ECF No. 526); *see also* Mot. 7 (ECF No. 526). And he included the Warden's response dated May 12, 2021, which states that Tamayo sought compassionate release based on his alleged unjust sentence, his mother's ailing health, and the COVID-19 pandemic. Mot. 69 (ECF No. 526). The Government does not argue that Tamayo failed to exhaust his administrative remedies under § 3582(c)(1)(A) and proceeds directly into addressing the merits of his claims. In view of these facts, the Court should determine that Tamayo properly exhausted his administrative remedies under § 3582(c)(1)(A) and address his motion on the merits.

### 2.    <u>Tamayo fails to show any extraordinary and compelling reason to reduce his sentence under § 3582(c)(1)(A)(i).</u>

Tamayo raises numerous arguments in support of his claim that he presents "extraordinary and compelling reasons," which warrant a sentence reduction. Specifically, he argues: (1) if sentenced today, his sentence would be shorter than the life imprisonment sentence he received; (2) the COVID-19 pandemic and prison staff are not following the Center for Disease Control and Prevention (CDC) guidelines; (3) he is no longer a threat to anyone or the community; (4) his post-sentencing § 3553(a) factors weigh strongly in his favor and amount to "extraordinary and compelling reasons"; (5) as of May 31, 2021, he had served nearly sixteen years in prison, which accomplishes the goal for sentencing him in the first place;

(6) changes to Title IV and 18 U.S.C. § 3582(c)(1)(A) made by the First Step Act of 2018 (FSA); (7) changes to drug mandatory minimum penalties under § 401 of the FSA; (8) the changes in mandatory minimum penalties to the § 851 enhancement for repeat offenders; (9) the Government violated the terms of his plea agreement; (10) he had a judicial trial penalty; (11) his family circumstances meet the appropriate standard; (12) he deserves mercy; and (13) his mother is in poor health, and he needs to be released to care for her.

As discussed, a district court may reduce a term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Section 1B1.13 and its commentary still provide guidance and "inform[]" the analysis of whether "extraordinary and compelling reasons" exist. *Thompson*, 984 F.3d at 433. Application Note 1 to § 1B1.13 defines "extraordinary and compelling reasons" to include the following situations:

(A)   Medical Condition of the Defendant.

(i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)   The defendant is

(I)     suffering from a serious physical or medical condition,

(II)    suffering from a serious functional or cognitive impairment, or

(III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)    Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)    Family Circumstances.

(i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)  Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, n.1. The BOP Program Statement 5050.50 issued on January 17, 2019, after the passage of the FSA, describes the factors the BOP considers as grounds for compassionate release under subsection (D), "Other Reasons." Specifically, BOP Program Statement 5050.50 includes

the same bases identified by the Sentencing Commission: serious medical condition(s), advanced age, and family circumstances. BOP Program Statement 5050.50 ¶¶ 3-6, https://bop.gov/policy/progstat/5050_050_EN.pdf; *see also United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020).

The alleged "extraordinary and compelling reasons" Tamayo sets forth in support of his request for compassionate release under § 3582(c)(1)(A)(i) are insufficient. For instance, he has not shown that he cannot provide self-care during his incarceration. And he is not over sixty-five years old or in declining health. *See* PSR at 2 (he was born on March 28, 1962). Likewise, he fails to suggest that he has minor children who require care. Finally, Tamayo claims that his mother is in poor health, and he needs to be released to care for her, but he ignores other evidence that he has three younger sisters who can assist. PSR ¶ 49.

Tamayo argues that he would receive a lower sentence if he were sentenced today. Mot. 2 (ECF No. 526). However, his argument is misplaced. If Tamayo were sentenced today, he would have the same guideline range of life imprisonment. PSR ¶ 61. Likewise, he would have the same § 3553(a) factors to support a sentence of life imprisonment. Finally, although § 401 of the FSA amended the types of prior offenses that can trigger enhanced penalties under 21 U.S.C. § 841(b)(1)(B), it does not apply retroactively. *See United States v. Ybarra*, 2021 WL 4736596, at *1 (5th Cir.

Oct. 8, 2021) (per curiam). Therefore § 401 applies only to defendants who had not been sentenced at the time of the FSA's enactment on December 21, 2018. *See* First Step Act of 2018, § 401(c), PL 115-391, December 21, 2018, 132 Stat. 5194 ("APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment."); *see also United States v. Richardson*, 948 F.3d 733, 748 (6th Cir. 2020) ("Congress has, in essence, drawn a line in the sand. Defendants sentenced after December 21, 2018, may benefit from Congress's amendment to § [841(b)(1)(A)], but defendants sentenced before that date cannot."). As noted, Tamayo was sentenced on November 27, 2006, so § 401 of the FSA would not apply to him. And his argument that the non-retroactive reduction of a mandatory minimum can amount to "extraordinary and compelling reasons" is not compelling under the facts and circumstances presented by this case.

At sentencing, the District Court held Tamayo responsible for 212 kilograms of methamphetamine (PSR ¶ 32), which is "an obscene amount of drugs" and would trigger the same base offense level today as when he was sentenced on November 27, 2006. *See* U.S.S.G. § 2D1.1(c)(1). The six-level enhancement under U.S.S.G. § 3A1.2(c)(1) that Tamayo received for assaulting an officer during the offense where the defendant had reasonable

12

cause to believe that the person was a law enforcement officer would also be unaffected if he were sentenced today. *See* PSR ¶ 35. That is, his base offense level for the drug quantity would be 38, and he would still have the six-level enhancement for assaulting a law enforcement officer under U.S.S.G. § 3A1.2(c)(1). Therefore, Tamayo would fall in the same guideline range today as when he was sentenced on November 27, 2006.

Tamayo claims that he received a trial penalty despite not exercising his right to go to trial. Mot. 40-42 (ECF No. 526). As discussed, he pleaded guilty to count one of the superseding indictment without a plea agreement. Tamayo also suggests that he received a "mandatory" sentence of life imprisonment. *Id.* 30. However, the District Court sentenced Tamayo to life imprisonment, a sentence that was consistent with his guideline range, but it was not mandatory sentence. *See* PSR ¶ 61. Tamayo also claims that he had a plea agreement in his case, but as discussed, that is not accurate. Mot. 35 (ECF No. 526). Tamayo argues that the COVID-19 pandemic is an extraordinary and compelling reason, and he claims that prison staff are not following the CDC guidelines. Because this argument presents no more than a generalized fear of contracting COVID-19, it does not warrant compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."). In sum, his claims fall short of demonstrating

"extraordinary and compelling reasons." Accordingly, Tamayo is not entitled to a sentence reduction under § 3582(c)(1)(A)(i).

Tamayo's motion under § 3582(c)(1)(A)(i) could arguably be viewed as an attempt to avoid the restrictions on the filing of a successive § 2255 motion. As discussed, Tamayo has unsuccessfully pursued numerous § 2255 motions in this Court. For him to file another § 2255 motion, he would be required to seek authorization for a successive motion. *See* 28 U.S.C. § 2244(a). Consequently, to the extent that he is using this compassionate release motion to attack his conviction and sentence under § 2255, without seeking the requisite authorization from the Fifth Circuit Court of Appeals, he should be prevented from doing so. *See United States v. Wentzel*, 858 F. App'x 943, 945 (7th Cir. 2021) (recognizing that the Court had previously "warned that district courts should not use § 3582(c)(1)(A)(i) to erode the limits on postconviction relief in 28 U.S.C. § 2255."); *United States v. MacLloyd*, 2021 WL 5263594, at *3 (6th Cir. Sept. 20, 2021) ("The relationship between § 2255's restrictions on successive habeas petitions and the broad discretion given to courts when considering the compassionate release factors under 18 U.S.C. § 3582(c)(1)(A) presents complicated and unresolved questions.").

### 3. **The § 3553(a) factors weigh against reducing Tamayo's sentence.**

Tamayo has not shown extraordinary and compelling reasons that weigh in favor of granting his motion. Therefore, given that he failed to meet the requirements of § 3582(c)(1)(A)(i), the Court need not address whether the § 3553(a) factors support a sentence reduction in this case. *See Thompson*, 984 F.3d at 433 & n.2 (holding that if a court does not find any "extraordinary and compelling reasons" warranting compassionate release, it need not address the § 3553(a) factors); *see also United States v. Reynard*, 2021 WL 2662139, at *6 (E.D. La. June 29, 2021). Nonetheless, the Court will address this issue.

Even if Tamayo demonstrated "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i), the § 3553(a) factors do not support a decision to reduce his sentence. When the court finds "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i), they must outweigh the § 3553(a) factors to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Sanchez-Chavez*, 2021 WL 5804279, at *3 (E.D. Tex. Dec. 7, 2021). In the Fifth Circuit, a defendant seeking compassionate release under § 3582(c)(1)(A)(i) must: (1) show "extraordinary reasons"; (2) demonstrate their release is consistent with the applicable policy statements from the United States Sentencing Commission; and (3) convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors. *Shkambi*, 993 F.3d at 392. Applying the § 3553(a) factors

to Tamayo's case, several of the factors support a finding that a sentence reduction is not warranted.

First, under § 3553(a)(1), Tamayo's drug offense was very serious. He managed and supervised a large-scale drug-trafficking enterprise. Tamayo's offense was grave at that time, and it is equally serious now. When law enforcement came to his house to execute the search and arrest warrants, he began shooting at the officers and injured four. Officer Hackbarth received a gunshot wound to his left leg, and Officer Perez was hit twice in the chest and once through the forearm. Officer Perez was wearing a bulletproof vest, and this safety measure likely saved his life. The four injured officers had to be evacuated from the scene by ambulance. Tamayo's conduct was grave at the time it occurred on February 16, 2006, and it remains equally serious today. The serious nature of the offense and surrounding conduct weighs heavily against release. *See United States v. Martinez*, 832 F. App'x 906, 906 (5th Cir. 2021) (per curiam) (finding that it was "not unreasonable for [a] court to place greater weight on the seriousness of [the] offense, including the fact that a dangerous weapon was involved in the criminal activity" when it denied compassionate release); *see also United States v. Brown*, 829 F. App'x 695, 696 (5th Cir. 2020) (finding"[i]t was not unreasonable for the district court to afford greater weight to [the defendant's] history and characteristics, the amount of time served on his sentence, and the need to protect the public from further crimes by [the defendant] than the weight it

16

placed upon his medical issues, the impact of the pandemic at [the prison] and the BOP's response to the pandemic."). This factor weighs against a sentence reduction in this case.

With respect to § 3553(a)(2)(A), the District Court's sentence, life imprisonment, reflects the very serious nature of the offense involved and the surrounding conduct, which resulted in four officers being injured. Therefore, this factor weighs against granting compassionate release in this case.

Under § 3553(a)(2)(B), the Court must ensure the sentence affords adequate deterrence to other criminal conduct. The significant sentence imposed here serves as a deterrent to others who may consider large-scale drug trafficking or engaging in a gun battle with law enforcement. Tamayo's decision to shoot at law enforcement when they came to his house resulted in injuries to four law enforcement officers. Because a lengthy sentence is both necessary and appropriate under these grave circumstances, Tamayo's sentence should not be reduced.

The last relevant factor, § 3553(a)(2)(C), addresses the need to protect the public from further crimes by Tamayo. He was involved in large-scale drug trafficking and engaged law enforcement in a gun battle when they came to execute a search and arrest warrants. In addition to harming four officers, Tamayo's decision to shoot at law enforcement endangered Tamayo's own family and potentially the public as well. The public should

be protected from further acts of violence by Tamayo. Accordingly, this factor weighs heavily in favor of denying his compassionate release motion.

Consistent with the foregoing, the § 3553(a) factors weigh in favor of denying Tamayo's motion for compassionate release. *See United States v. Samak,* 832 F. App'x 330, 331 (5th Cir. 2020) (affirming and finding that the defendant failed to demonstrate that the district court abused its discretion when it denied his § 3582(c)(1)(A) motion after weighing the § 3553(a) factors); *see also United States v. Faulkner,* 2021 WL 5746529, at *3 (N.D. Tex. Dec. 2, 2021).

### 4. <u>Tamayo is not entitled to appointed counsel.</u>

Last, Tamayo moves for the appointment of counsel to assist him. Mot. 68 (ECF No. 526). When he filed his compassionate release motion on June 20, 2021, he also filed a motion for appointed counsel to assist him (ECF No. 527). On July 26, 2021, the District Court denied the motion (ECF No. 528). At that time, the District Court found that Tamayo failed to demonstrate that he was entitled to appointed counsel under the Criminal Justice Act of 1964 (CJA), 18 U.S.C. § 3006A, and his motion was otherwise not persuasive.

It is well-established that there is no constitutional right to counsel in postconviction proceedings. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to only the first appeal of right, and no further."); *see also United States v. Garcia,* 689 F.3d 362, 365

(5th Cir. 2012) (finding no constitutional right to appointed counsel under the Sixth Amendment to seek post-conviction relief); *United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) (finding no constitutional right to appointed counsel under the Sixth Amendment to file a motion to reduce sentence under a § 3582(c)(2)). "The First Step Act does not provide for the appointment of counsel for those seeking relief under § 3582(c)(1)(A)[.]" *United States v. Jackson*, 2020 WL 4365633, at *3 (N.D. Tex. July 30, 2020) (recognizing that the issue had not been addressed by the Fifth Circuit); *see also United States v. Dirks*, 2020 WL 3574648, at *2 (N.D. Tex. June 30, 2020).

Tamayo has not come forward with an argument to demonstrate he needs and is entitled to the appointment of counsel. His motion for compassionate release under § 3582(c)(1)(A)(i) is drafted and filed with the Court. No other briefing is anticipated. Accordingly, the District Court should DENY Tamayo's renewed request for the appointment of counsel.

## Recommendation

The District Court should DENY Tamayo's motion for compassionate release (ECF No. 526).

Signed March 14, 2022.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996)*.